IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN WEBB and
MARSHA BRYAN,

                Plaintiff,

v.                                          CIVIL ACTION NO.   3:20-0214

CMH HOMES, INC., d.b.a. Clayton Homes,
VANDERBILT MORTGAGE AND FINANCE, INC., and
HOMEFIRST AGENCY, INC.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss or, in the Alternative, Compel Arbitration by Defendants CMH Homes, Inc, d/b/a Clayton Holmes (CMH), Vanderbilt Mortgage and Finance, Inc. (Vanderbilt) and HomeFirst Agency, Inc. (HomeFirst). ECF No. 34. Defendants also have filed a Motion to Stay. ECF No. 36. Plaintiffs John Webb and Marsha Bryan oppose both motions. Upon consideration, the Court agrees with Plaintiffs and **DENIES** the motions.

**I.
FACTUAL BACKGROUND**

In 2019, Plaintiffs purchased a mobile home from CMH. At the time of the purchase, Plaintiffs entered into three contracts. First was the "Sales Agreement" with CMH. Second was a "Consumer Loan Note and Security Agreement" with Vanderbilt. Third was for a homeowner insurance policy with American Bankers Insurance Company of Florida, with HomeFirst acting as its appointed agent that issued the policy. As part of the transactions, Plaintiffs also purchased a number of goods and services from independent contractors for such as things as

installation, utility hookups, vinyl skirting, a ramp, a washer, and a dryer. After moving into the home, Plaintiffs began reporting a number of problems. Ultimately, Plaintiffs brought this action against CMH, Vanderbilt, CMH Manufacturing, and five independent contractors that provided goods and services.[1]

In the original Complaint, Plaintiffs claimed, inter alia, that the mobile home had manufacturing defects and damage both before and/or after delivery and installation. Additionally, Plaintiffs asserted they were misled with respect to financing with Vanderbilt. Based upon these allegations, Plaintiffs made a litany of claims.[2] However, before responsive pleadings were filed, the parties mediated and reached a partial settlement. The settlement with CMH and CMH Manufacturing resolved "**all claims of any nature arising from or relating to the construction, installation and repair of the Home**[.]" *Pro Tanto Release and Settlement Agreement*, at 2 (emphasis original), ECF No. 34-1. The settlement also provided that:

> Plaintiffs shall file an unopposed motion to amend their complaint to remove allegations, claims and Defendants rendered unnecessary by this Release. CMH Homes, Inc. shall remain a party to the Litigation, but only as to claims that do not arise from or relate to the construction, installation and repair of the Home.

---

[1] These Defendants are Lawson's Construction, Lawson's Electrical Contracting, Waughs Mobile Home Set & Repair, Ashworth's Mobile Home Movers, LLC, and Blevins, Inc. Plaintiffs also named a "John Doe Holder."

[2] These claims included: violations of the West Virginia Consumer Credit and Protection Act (WVCCPA) for Unfair and Deceptive Acts and Practices, Fraud, Unconscionable Inducement, Contract Defense of Fraud in the Inducement, Contract Defense of Illegal Transaction, Breach of Contract, Breach of Express Warranty, violation of the Magnusson-Moss Federal Warranty Law, Breach of the Warranty of Merchantability, Breach of the Warranty of Fitness for a Particular Purpose, Negligence and Strict Liability, violations of the Truth in Lending Act, Joint Venture, and violations of the WVCCPA for Incorporation of an Illegal Arbitration Clause.

*Id*. Vanderbilt was not a party to the settlement, and the independent contractors were released in a separate agreement.

Thereafter, Plaintiffs filed an Amended Complaint against CMH and Vanderbilt. Plaintiffs also added HomeFirst as a new Defendant. In this complaint, Plaintiffs allege that HomeFirst, CMH, and Vanderbilt are under the same control and ownership, *Am. Compl.* ¶9, ECF No. 31, and they are liable for violations of the WVCCPA for Unfair and Deceptive Acts and Practices, Fraudulent Inducement, Unconscionability, violations of the Truth in Lending Act (TILA), Joint Venture, and violations of the WVCCPA for Incorporation of an Illegal Arbitration Clause. In lieu of an answer, Defendants filed the current motions, arguing that the claims must be dismissed because they are encompassed within the earlier settlement as they relate to "the construction, installation and repair of the Home." *Pro Tanto Release and Settlement Agreement*, at 2. Alternatively, Defendants argue that, to the extent the Court finds there are unsettled claims, some are subject to arbitration and the nonarbitrable claims should be stayed until arbitration is complete.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint

as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court

further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

Additionally, when ruling on a motion to dismiss, this Court may consider documents outside the pleadings under limited circumstances without converting the motion to one for summary judgment. *Johnson v. James B. Nutter & Co.*, 438 F. Supp. 3d 697, 704 (S.D. W. Va. 2020). Documents the Court may consider specifically include those "'submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal citation omitted)). With this in mind, the Court finds that the parties do not dispute the authenticity of the contracts or the partial settlement, and they are integral to the Amended Complaint.[3] Therefore, the Court may consider them without transforming Defendants' motion to one for summary judgment.

### III.
### DISCUSSION

Following the partial settlement, the mediator submitted a report to the Court expressly stating that the agreement did not include "Plaintiffs' lending claims against defendants CMH Homes, Inc. and Vanderbilt Mortgage and Finance, Inc." *Ltr. from Donald B. O'Dell to Rory L. Perry, II, Clerk* (Aug. 21, 2020), ECF No. 19. The mediator further indicated that the

---

[3] In fact, Plaintiffs actually attached a copy of the "Binding Dispute Resolution Agreement" as Exhibit A to the Amended Complaint. ECF No. 31-1.

parties would continue working to resolve the remaining claims. *Id.* Neither party disputes this representation, but Plaintiffs contend Defendants have refused to return to mediation. Instead, Defendants seek to dismiss or arbitrate the claims in the Amended Complaint, which Plaintiffs argue were not included in the partial settlement and are not subject to arbitration.

In support of their motion, Defendants draw the Court's attention to scores of allegations in the Amended Complaint "relat[ed] to the construction, installation and repair of the Home." *Pro Tanto Release and Settlement Agreement*, at 2. As those claims are covered under the agreement, Defendants argue they must be dismissed. Plaintiffs do not deny the Amended Complaint references these problems; however, Plaintiffs insist Defendants are mischaracterizing their claims. Upon review, the Court agrees that the remaining claims are not covered by the partial settlement.

It is clear in reading the Amended Complaint that Plaintiffs are not seeking damages for the construction, installation, and repair of the mobile home. Instead, Plaintiffs refer to these matters to show the context in which they claim Defendants induced them into the financing agreement, which was expressly excluded from the partial settlement. For instance, Plaintiffs allege that CMH, Vanderbilt, and HomeFirst "operate as departments of the same company," and CMH's salesperson "Patty" acted as an agent for all three companies. *Am. Compl.* ¶¶14, 28, 86. Although Plaintiffs did not want to purchase a new mobile home, Plaintiffs claim Patty mislead them and "steered them into needing to purchase a new home to obtain financing." *Id.* ¶¶26, 33, 34. Plaintiffs also allege that it was Patty who provided them with the loan application, and that it was Patty who returned the signed loan application to Vanderbilt. *Id.* ¶69. Plaintiffs claim Patty

originated the loan for Vanderbilt, and she made no attempt to find a different lender offering better terms. *Id*. ¶70. Due to common ownership with CMH, Plaintiffs maintain Patty had incentive to push the Vanderbilt loan. *Id.* ¶71. When Patty asked for the down payment, she said the check should be made out to "Clayton,"[4] "even though Vanderbilt was ostensibly the entity requesting the down payment[.]" *Id*. ¶¶73-75. Plaintiffs also allege Patty mislead them as to what was being financed and the cost of various goods and services. *Id*. ¶¶76, 78-84. Plaintiffs specifically assert Patty acted as Defendants' agent during the closing. *Id*. *Am. Compl.* ¶86.[5] Plaintiffs further state the closing was rushed, all documents were provided at the same time, and "[t]he entire transaction was a single occurrence arising out of, originating from, having its origin in, growing out of, or flowing from the financing of a mobile home." *Id*. ¶¶104, 105. With respect to insurance, Plaintiffs claim CMH[6] "solicited and sold Plaintiffs insurance while also conducting most aspects of the loan transaction," and CMH included payment for insurance in the loan, despite such financing be prohibited under West Virginia law. *Id*. ¶¶107-114 (citing West Virginia Code § 33-11A-9(b), which states, in part: [l]oans and extensions of credit shall not include financing in connection with the insurance product offered or sold").

Although there is commonality amongst the underlying facts alleged in the Amended Complaint with the settled claims, the Court finds Plaintiffs are not seeking further

---

[4]CMH does business as "Clayton Homes."

[5]Plaintiffs claim the only other person there was an attorney, who they later learned was disbarred and was there only in the capacity of a notary. Yet, Defendants charged Plaintiffs $225 in attorney's fees for the closing. *Id*. ¶¶86-94.

[6]In other allegations, Plaintiffs state that CHM's agent, Rich Rittinger, sold Plaintiffs the insurance policy. *Id*. at ¶133.

recovery for faulty construction, installation, and repair of the mobile home. Those claims were put to rest with the partial settlement. Rather, Plaintiffs are merely explaining the context upon which the events unfolded to show how Defendants allegedly hoodwinked them into a dubious financial agreement. Plaintiffs are required under Rule 8 to set forth a sufficient factual basis for their claims and, as Plaintiffs also have alleged fraud, Rule 9(b) further requires them to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, as both the settled and non-settled claims involve the same factual underpinnings, Plaintiffs references to construction, installation, and repair of the mobile home simply provide the backdrop of the false promises and representations Defendants allegedly made to encourage and steer them into the loan with Vanderbilt and purchase the insurance policy from HomeFirst. Assuming the truth of these allegations for purposes of a motion to dismiss, the Court finds Plaintiffs' financing claims are distinct from the settled claims and are not included in the partial settlement. Moreover, the Court notes that neither Vanderbilt nor HomeFirst were even a part of the partial settlement, and the partial settlement agreement expressly provides that "CMH Homes, Inc. shall remain a party to the Litigation . . . as to claims that do not arise from or relate to the construction, installation and repair of the Home." *Pro Tanto Release and Settlement Agreement*, at 2. Although Defendants ask this Court to consider these claims as "aris[ing] from or relate[d] to the construction, installation and repair of the Home" because Plaintiffs mention those things in the Amended Complaint, the Court declines to sweep with such a wide brush, finding such approach would be contrary to what the parties actually settled.

In the alternative, Defendants argue that Plaintiffs signed a "Binding Dispute Resolution Agreement" with the Sales Contract that requires arbitration. In relevant part, this Binding Dispute Resolution Agreement provides:

> A. <u>Scope of the Agreement</u>: This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries (collectively, the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity and enforceability of the contract . . . .

*Binding Dispute Resolution Agreement*, ¶A, ECF No. 34-5. Significantly, however, the Agreement also contains an exception to arbitration. This provision states:

> B. <u>Exclusion for Consumer Credit Transactions Secured by a Dwelling</u>: Notwithstanding anything herein to the contrary, nothing in this Agreement shall be construed to require mandatory mediation or binding arbitration of any disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling. Disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling are specifically excluded from the definition of "Claim" or "Claims."

*Id.* ¶B.

Under these provisions, Defendants admit that, to the extent Plaintiffs' claims arise under the "Consumer Loan Note and Security Agreement" with Vanderbilt, those claims qualify

under the exception as a "Consumer Credit Transactions Secured by a Dwelling" and are not arbitrable. In fact, 15 U.S.C. § 1639c(e)(3) prohibits arbitration clauses in loan agreements secured by the consumer's principal dwelling.[7] Nevertheless, Defendants insist that all non-settled claims related to the Sales Contract are subject to arbitration under the Dispute Resolution Agreement.

As stated above, however, Plaintiffs maintain that all their interactions with Defendants were directed at getting them to enter into financing with Vanderbilt, which included the various representations and misrepresentations about the mobile home and goods and services they were being sold. In other words, Plaintiffs claim the lynchpin of the entire transaction relates to the credit transaction. Without doubt, the loan document was secured by the mobile home and is not arbitrable. Although Defendants argue the Sales Contract must be evaluated separately, the Court does not read Plaintiffs' Amended Complaint as making claims that directly arise under the Sales Contract apart from the loan agreement. Instead, Plaintiffs' claims appear to arise from the financing arrangement. Therefore, as it is the financing agreement that is the driving force underlying Plaintiffs' claims, the Court finds they are not arbitrable.

In making this determination, the Court recognizes that Count VI is somewhat different than the other claims because Plaintiffs allege the arbitration clause in the Sales Contract is unconscionable and constitutes an unfair and deceptive act in violation of West Virginia Code

---

[7] Section 1639c(e)(3)(1) provides: "No residential mortgage loan . . . secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(3)(1), in part.

§ 46A-6-104.[8] Specifically, Plaintiffs claim that, when they sent a letter to cure to Defendants, both CMH and Vanderbilt responded by threatening to file a motion to compel arbitration. *Am. Compl.* ¶¶181-84. However, Defendants argue this claim must be dismissed because they only seek to enforce arbitration against the claims arising under the Sales Contract. They deny attempting to arbitrate any claims arising under the loan agreement. Thus, Defendants contend they did nothing wrong, and there is no claim. However, given the Court's holding that the arbitration provision does not apply to Plaintiffs' existing claims, the Court finds Plaintiffs have stated a plausible claim in Count VI and **DENIES** Defendants' motion.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss or, in the alternative, Compel Arbitration. ECF No. 34. Additionally, as there is no reason to stay this action in light of this holding, the Court **DENIES** Defendants Motion to Stay. ECF No. 36.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 26, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[8]Section 46A-6-104 provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va. Code § 46A-6-104.